IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:22CR3 |
| vs. | |
| | FINDINGS AND RECOMMENDATION |
| TOREY LEE BENSON, | |
| Defendant. | |

    This matter is before the Court on Defendant's Motion to Suppress (Filing No. 23). An evidentiary hearing on the motion was held on June 16, 2022 and the matter is now ripe for disposition. For the reasons explained below, the motion will be denied.

## FACTS

    Butler County Sheriff's Deputy Michael Mejstrik ("Deputy Mejstrik") testified at the evidentiary hearing in this case. Deputy Mejstrik has been employed with the Butler County Sheriff's Office for approximately five and a half years. (TR. 5.) Deputy Mejstrik is currently assigned as a K-9 handler and is certified in the detection of narcotics and criminal apprehension. (TR. 6.) As part of his duties, Deputy Mejstrik conducts traffic stops. (TR. 6.) Deputy Mejstrik testified he has conducted several hundred traffic stops over the course of his career. (TR. 7.)

    On November 27, 2021, at approximately 5:00 p.m., Deputy Mejstrik was on patrol, sitting stationary in his cruiser near the intersection of O Road on Highway 92 in Butler County. (TR. 7.) Deputy Mejstrik's cruiser was equipped with a dash camera and he was wearing a body camera at the time. (TR. 8; Exs. 1, 2.) As he was sitting near the intersection, a 2009 black Acura sedan traveling westbound passed in front of him. (TR. 8-9.) Deputy Mejstrik testified that the vehicle

had dark tinted windows and a tinted front windshield. (TR. 9.) Deputy Mejstrik testified that he could not recall if the vehicle's headlights were on when it passed him. (TR. 34-35.)

Deputy Mejstrik pulled onto Highway 92 and got behind Defendant's vehicle. (TR. 9-10; Ex. 1.) Deputy Mejstrik positioned himself approximately fifty feet behind Defendant's vehicle. (TR. 9; Ex. 1.) Deputy Mejstrik testified Defendant's vehicle caught his attention because it had dark tinted windows and tinted taillights. (TR. 10.) Deputy Mejstrik testified that his ability to see inside the vehicle was substantially impaired because as it passed in front of him at the intersection, he could not see into the side windows at all. (TR. 17.) Deputy Mejstrik testified that based on his training and experience, Defendant's vehicle was in violation of Neb. Rev. Stat. § 60-6,257, which requires an individual to be able to see into a vehicle from the outside. (TR. 14; TR. 16-18; Exs. 6, 7, 8, 9, 10, 11.)

Deputy Mejstrik stated that as he was following Defendant's vehicle, he noticed it making movements to the right side of the lane towards the shoulder. (TR. 10.) Deputy Mejstrik testified that he observed the passenger side tires touch the white fog lines of the roadway twice and, on the last instance, the vehicle's tire completely covered the white fog line and the outermost portion of the tire was on the unpainted portion of the shoulder on the right side of the fog line. (TR. 10; TR. 24-25; Ex. 1.) Deputy Mejstrik testified Defendant violated Neb. Rev. Stat. § 60-6,142 which prohibits driving on shoulders of roadways. (TR. 25.)

Deputy Mejstrik also testified he noticed that the taillights on Defendant's vehicle matched the color of the body of the vehicle and were not very visible. (TR. 18; Exs. 3, 4, 5.) Deputy Mejstrik stated that a car traveling in front of Defendant, which was approximately one hundred feet in front of Deputy Mejstrik, had brighter taillights than Defendant's vehicle. (TR. 21; Ex. 1.) Deputy Mejstrik stated the taillights on Defendant's vehicle did not have a substantially normal output of light. (TR. 21.) Deputy Mejstrik stated that the taillights on Defendant's vehicle appeared to have a tinted film or tint covering them, making them darker. (TR. 22; Exs. 3, 4, 5.) Deputy Mejstrik testified that the tint of the taillights made it harder to see the light from the taillights. (TR. 22.) Deputy Mejstrik stated that based on his training and experience, Defendant's taillights violated Neb. Rev. Stat. § 60-6,219 because they did not radiate red light that was visible from a distance of at least 500 feet to the rear of the vehicle. (TR. 18-23.)

Deputy Mejstrik testified that due to his observations of the vehicle, he decided to initiate a traffic stop. (TR. 9-10; Ex. 1.) Deputy Mejstrik activated his overhead lights to make the traffic stop. (TR. 17; Ex. 1.) Defendant turned off the road onto a property he was not associated with and turned his vehicle around to face the road. (Ex. 1; Ex. 2.) When Defendant's vehicle stopped, it was positioned in such a way that it was facing Deputy Mejstrik's cruiser. (TR. 17; Ex. 1.) Deputy Mejstrik testified that the traffic stop occurred around sunset. (TR. 26; Ex. 1.) He said it was not completely dark outside so headlights were not required and taillights did not need to be illuminated. (TR. 26.) Deputy Mejstrik testified it was apparent to him when the vehicle was pulled-over that the vehicle's exterior lighting was activated, including its taillights. (TR. 33; Ex. 1.) Deputy Mejstrik stated that at that point, he did not realize there was a second individual in Defendant's vehicle because he could not see through the windshield. (TR. 17; Ex. 2.) Deputy Mejstrik testified his view into the vehicle was substantially impaired and he could only see Defendant through the windshield because Defendant was wearing a bright white hoodie. (TR. 17-18; Ex. 2.) Deputy Mejstrik stated that based on his training and experience, and from his observations on the day of the traffic stop, it would also be difficult for a driver to have a clear view through the windows of the vehicle. (TR. 18; Ex. 2.) Deputy Mejstrik testified that the sun-screening material would make if difficult to see outside the windshield, especially after sundown. (TR. 18.) Deputy Mejstrik testified that based on his training and experience, Defendant violated Neb. Rev. Stat. § 60-6,257 because the tinting made it difficult to see inside and outside the vehicle.

Once the vehicles were stopped, Deputy Mejstrik exited his cruiser and motioned for Defendant to walk back toward him. (TR. 31; Exs. 1, 2.) Deputy Mejstrik's shift partner, who was in a separate vehicle, was also on the scene for the traffic stop. (TR. 31; Exs. 1, 2.) Defendant walked back to the officers and began speaking to Defendant's shift partner. (TR. 31; Exs. 1, 2.) Deputy Mejstrik then went to Defendant's vehicle to retrieve Defendant's license and paperwork for the vehicle. (TR. 31; Exs. 1, 2.) Deputy Mejstrik was able to get the materials from the passenger in Defendant's vehicle. (TR. 32; Ex. 2.) Once he retrieved the documents, Deputy Mejstrik took them back to his shift partner. (TR. 31; Ex. 2.) Deputy Mejstrik's shift partner then took Defendant back to his patrol unit to do the records check and the enforcement action of the stop. (TR. 32; Ex. 2.) At that point, Deputy Mejstrik took his K-9 out of his cruiser to run around

Defendant's vehicle. (TR. 32; Exs. 1, 2.) Deputy Mejstrik testified that the traffic stop had not been completed at the time the K-9 was removed from the cruiser.[1] (TR. 34.)

Deputy Mejstrik testified that as part of his investigation, he measured the windshield of Defendant's vehicle to see if there was tint on it. (TR. 14.) Deputy Mejstrik testified that it is a violation of Nebraska law to have tint below the AS-1 line of a vehicle. (TR. 11.) Deputy Mejstrik testified that the AS-1 line is typically within five inches of the top of the windshield and depicts where sunscreening material, such as tint, cannot extend down the windshield any further. (TR. 11.) Deputy Mejstrik testified the AS-1 line is approximately around the mount for the rearview mirror. (TR. 12-13.) Deputy Mejstrik was shown photographs of Defendant's windshield during the hearing and testified that there was bubbling, which was air trapped between the film of the tint and the windshield, below the AS-1 line. (TR. 13; TR. 14; Exs. 10, 11.) Deputy Mejstrik stated that based on his training and experience, there was tint below the AS-1 line. (TR. 14.)

Deputy Mejstrik testified that he also took a measurement of the windshield approximately twelve inches below where the AS-1 line would be, which is roughly the middle of the windshield. (TR. 14.) Deputy Mejstrik testified that his measurement resulted in a forty-two percent light transmittance, which confirmed there was window tinting below the AS-1 line in violation of Nebraska law. (TR. 14-15.) Deputy Mejstrik further testified that he measured the tint of the driver's front side window and that it measured at 30.4 percent light transmittance which was also a violation of Nebraska law. (TR. 16; Ex. 6.)

## DISCUSSION

It is well-established that a "police officer may stop a vehicle when he or she has probable cause to believe that the driver has committed a traffic violation." *United States v. Andrews*, 454 F.3d 919, 921 (8th Cir. 2006). "Probable cause exists when a reasonable officer, confronted with the facts known to the officer at the time of the stop, could have believed that there was a fair

---

[1] Defendant's counsel requested at the hearing that he be allowed to ask questions regarding when Deputy Mejstrik got his K-9 out of his cruiser to run around Defendant's vehicle. (TR. 28-30.) The purpose of this questioning was to determine whether the traffic stop was unlawfully extended to provide time for Deputy Mejstrik's K-9 to run around Defendant's vehicle. (TR. 28-30.) The Court allowed this questioning. However, Defendant's counsel did not brief this issue and did not assert this argument at the conclusion of the hearing. Therefore, the Court finds Defendant is not pursuing this argument and this issue will not be addressed in this Findings and Recommendation. However, the Court notes that the evidence does not support the argument that the traffic stop was unlawfully extended.

probability that a violation of law had occurred." *Id*. "Courts are not to consider the motive for a stop as long as the reason for the stop is valid." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). "The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999). "Even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an objectively reasonable one." *United States v. Herrera–Gonzalez,* 474 F.3d 1105, 1109 (8th Cir. 2007).

Deputy Mejstrik testified that he believed Defendant had violated several Nebraska statutes. First, Deputy Mejstrik believed Defendant's vehicle did not comply with Neb. Rev. Stat. § 60-6,257 due to both the amount and placement of tinting on its windshield and windows. This statute provides, in part:

> (1) It shall be unlawful for a person to drive a motor vehicle required to be registered in this state upon a highway:
>
> (a) If the windows in such motor vehicle are tinted so that the driver's clear view through the windshield or side or rear windows is reduced or the ability to see into the motor vehicle is substantially impaired;
>
> (b) If the windshield has any sunscreening material that is not clear and transparent below the AS-1 line or if it has a sunscreening material that is red, yellow, or amber in color above the AS-1 line;
>
> (c) If the front side windows have any sunscreening or other transparent material that has a luminous reflectance of more than thirty-five percent or has light transmission of less than thirty-five percent.

Neb. Rev. Stat. § 60-6,257.

The evidence demonstrates Defendant violated this statute in multiple ways. First, the windows of the vehicle were tinted to such a degree that Defendant's ability to see through the windshield or side windows, as well as another person's ability to see inside the vehicle, was substantially impaired in violation of Neb. Rev. Stat. § 60-6,257(1)(a). Deputy Mejstrik testified Defendant's vehicle caught his attention because it had dark tinted windows and tinted taillights. Deputy Mejstrik testified that his ability to see inside the vehicle was substantially impaired because as it passed in front of him near the intersection, he could not see into the side windows

5

at all. When Deputy Mejstrik entered the roadway, he positioned himself approximately fifty feet behind Defendant's vehicle. Despite this close distance as he was following the vehicle on the roadway, Deputy Mejstrik only discovered someone else was in the vehicle after he asked Defendant how many people were in the vehicle as Defendant was walking back to him after the traffic stop. Deputy Mejstrik testified that when Defendant's vehicle was facing his cruiser at the time of the traffic stop, he did not know if there was anyone else in the vehicle because he could not see through the windshield. Deputy Mejstrik testified that he believed he could see Defendant through the windshield because Defendant was wearing a bright white hoodie.

Deputy Mejstrik further testified that based on his training and experience, and from his observations on the day of the traffic stop, it would be difficult for a driver to have a clear view through the windows and windshield of the vehicle. Deputy Mejstrik testified that the sun-screening material would make it difficult to see outside the windshield. Exhibits offered at the hearing support Deputy Mejstrik's testimony that the ability to see in and out of the windows and windshield was substantially impaired. Defendant's windshield and windows were clearly in violation of Neb. Rev. Stat. § 60-6,257(1)(a). This violation, which was confirmed following the traffic stop, provided Deputy Mejstrik with probable cause for the stop. At the very least, based on the dark tint on the windshield and windows shown in the dash camera footage, Deputy Mejstrik's belief that Defendant violated this statute was objectively reasonable. Therefore, Defendant's constitutional rights were not violated.

Second, the evidence shows the windshield had tinting below the AS-1 in violation of Neb. Rev. Stat. § 60-6,257(1)(b). Exhibits 8 through 11, which depict the windshield of Defendant's vehicle, show tinting below the vehicle's AS-1 line. Deputy Mejstrik testified at the hearing that the AS-1 line is typically within five inches of the top of the windshield. Deputy Mejstrik stated the AS-1 line is located around the mount for the rearview mirror. Deputy Mejstrik was shown photographs of Defendant's windshield during the hearing and testified that there was bubbling on the windshield, which was air trapped between the film of the tint and the windshield, located below the AS-1 line. Deputy Mejstrik stated that based on his training and experience, there was tinting below the AS-1 line. Deputy Mejstrik also testified that he took a measurement of the windshield approximately twelve inches below where the AS-1 line would be, which is roughly the middle of the windshield. Deputy Mejstrik testified that his measurement resulted in a forty-

two percent light transmittance, which confirmed there was window tinting below the AS-1 line. From the undersigned's review of the exhibits, it is apparent that there was tinting below the AS-1 line in violation of Nebraska law and it was reasonable for Deputy Mejstrik to believe this was the case at the time of the traffic stop.

Third, the evidence shows the side windows of the vehicle had light transmission of less than thirty-five percent in violation of Neb. Rev. Stat. § 60-6,257(1)(c). Deputy Mejstrik testified that as part of his investigation, he measured the tint of the front windows and that the driver's front side window measured at 30.4 percent light transmittance. This level violated Neb. Rev. Stat. § 60-6,257(1)(c), providing probable cause to initiate the traffic stop. Moreover, even if Deputy Mejstrik had been incorrect in his assessment of the light transmittance before initiating the traffic stop, his belief that the vehicle was in violation of Neb. Rev. Stat. § 60-6,257(1)(c) was objectively reasonable, judging from the photographs of the windows which were offered at the evidentiary hearing. *See United States v. Maurstad,* 35 F.4th 1139, 1143 (8th Cir. 2022) (finding officer's mistake as to lawfulness of window tint objectively reasonable where the tint was too dark under the statute and there was no way for the officer to know the tint fell within an exception for manufacturer-tinted windows before the stop).

In addition to Neb. Rev. Stat. § 60-6,257, the evidence shows that Defendant violated Neb. Rev. Stat. § 60-6,219(3), which requires that vehicles "be equipped with one or more taillights . . . exhibiting a red light visible from a distance of at least five hundred feet to the rear of such vehicle. Neb. Rev. Stat. § 60-6,219(3). The photographs of the taillights of Defendant's vehicle show that the taillights matched the color of the body of the vehicle and were not very visible. It appears from the exhibits submitted to the Court that the taillights had a tinted film on them which made them appear darker. Deputy Mejstrik confirmed the taillights' low visibility when he testified that a car traveling in front of Defendant, which was approximately one hundred feet in front of Deputy Mejstrik, had brighter taillights than Defendant's vehicle. This is reflected in the dash camera video. The dash camera footage, as well as Deputy Mejstrik's testimony, supports the conclusion that Defendant's vehicle's taillights would not be visible from a distance of at least 500 feet away.

The video of the traffic stop also shows that Defendant's vehicle passed onto the shoulder of the roadway in violation of Neb. Rev. Stat. § 60-6,142, which prohibits driving on the shoulders

7

of highways. Neb. Rev. Stat. § 60-6,142. "[A]ny crossing of the fog line, even momentarily and inadvertently crossing onto the shoulder, is enough to violate" Nebraska law. *United States v. Perez*, 4:20CR3066, 2021 WL 5168341, at *6-7 (D. Neb. Oct. 13, 2021) (quotation omitted). The violation of Neb. Rev. Stat. § 60-6,142 was clearly depicted in the dash camera video. Deputy Mejstrik also testified as to his observation of the infraction. The violation of this statute provided probable cause for the traffic stop.

Accordingly,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Robert Rossiter, Jr. that Defendant's Motion to Suppress (Filing No. 23) be denied.

Dated this 10th day of August, 2022.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.